Our next case is Agenda Number 15, Consolidated Numbers 114876 and 114911 Jimmy Crittenden v. Cook County Commission on Human Rights. Counsel for the appellant. Chief Justice, Justices, my name is Maureen Hannon. I'm an Assistant State's Attorney for Cook County. And along with my co-counsel, Thomas Cargi, we are here on behalf of Cook County and the Cook County Department of Human Rights. We believe that the First District Appellate Court recently, in June of 2012, made an error in holding that the Cook County Commission did not have the authority to award punitive damages. We believe this error was a surprise for several reasons. First, because the First District had already previously decided that the identical language in the City of Chicago Human Rights Ordinance permitted a finding of punitive damages and permitted the authority on the identical language to award punitive damages. It was also a surprise because the case itself warranted punitive damages, and I will let Counsel for Ms. Lynetta Boyd, who was the injured party in this case, address that. We believe that the Cook County Commission has authority to award punitive damages for three reasons. First, the enforcement remedies of the statute itself permit that the remedies can include anything, relief may include but is not limited to, and then there is a list of remedies. This Court has held in Vincent v. Alden Park Strathmore that punitive damages are in fact a type of remedy. In addition, the language of the ordinance is very broad. It is indicative of the desire of the Cook County Board of Commissioners to give discretionary authority to the Commission. In addition to granting the power to the Commission to cease the illegal conduct complained of and to take steps to alleviate the effect of the illegal conduct, I'd like to point out that the ordinance also gives the Commission authority to file with the Department of Professional Regulation a notice in the event that any licensed real estate broker or salesperson violates this ordinance. That discretionary authority, they may file it or may not, is indicative of the desire of the Cook County Board to grant the Commission the authority to slap the hand of the defendant. That is, the power here is implicit within the relief, the power to award punitive damages is implicit within the relief that is set forth, but it is also consistent with the rest of the statute that is broad and permits the Commission to take some action toward the defendant, which is typical of punitive damages. Is the issue here whether the Cook County Board could pass the ordinance granting the Human Rights Commission the authority to award punitive damages? Or is it a relevant issue whether the Board did pass such an ordinance based on the language of the ordinance? I think the second, Your Honor. I don't think there's any dispute that based on the home rule power of Cook County that we could pass an ordinance to let them award punitive damages. But our position is that the authority to award punitive damages is inherently within the power already granted, that is, it is implicitly within the fair devolution of the express powers. I think the fact that, yes, the fact that this was entered by a home rule unit of government to protect its public health, safety, morals, and welfare is indicative of our desire to give this broad grant of authority to the Commission. It's an interesting question that Justice Freeman raises, though. We're basically a speed bump here, right? I mean, if we can either say that it's not in the language itself, right, you would agree that punitive damages is not mentioned in the ordinance, but your position is it's open-ended enough to include punitive damages. And if the, you mentioned that two appellate courts have gone different ways here, presumably that's why it's here, but regardless, once we rule, the ordinance can always be changed. That is true, Your Honor, but we don't want to handicap ordinances and handicap boards that enter these types of things and make them expressly state each and every remedy. Therefore, we would make the whole statutory interpretation of implied powers irrelevant if we did that. There is case law, of course, where the interpretation of an ordinance by its own body has taken precedence. I submit that the fact that the County Board didn't amend this ordinance after the Page decision was entered in 1998, it didn't amend this ordinance even in 2002 when our ordinance was corrected to not to handicap or clip the wings of the Commission, but in fact to expand its scope. In 2002, we added gender identity as a protected class. So if the County Board didn't want to include punitive damages as a special remedy, they would have expressly so stated, and they could have in the 20 years since this ordinance has been in effect. Ms. Hannon, there's no one here to argue this, so I'm going to raise it. Would you respond to the argument that the ordinance specifically provides for taking steps to alleviate the effect of the illegal conduct and specifically says you can impose a fine? If punitives were intended, why didn't they specifically say that? Fines typically, Your Honor, are appropriate when the injured party is the public itself, the public fisc, to the extent a case is brought challenging the behavior of a defendant. I can't think of one right now, whereas there is not an injured party like in a sexual harassment case. Fines are appropriate, and they are a good recommendation. And I think this list in the remedies from the Cook County Board setting up the Commission is indicative of ideas and possibilities, but there is no way that that's a limitation on the event, on the power of the authority to do it. May I ask you another section of the ordinance? And again, there's not anyone on the other side, so I hope I don't surprise you with this. But Article 10, section B, section B4A states, the hearing officer hearing the case shall make findings of fact based on the evidence admitted at the hearing, and shall also recommend such relief as is appropriate to make a complainant whole. Doesn't that seem to be very clear language, that the authority is to make a complainant whole, compensatory? Not cumulative damages? Your Honor, respectfully, I think that language isn't a limitation. I think it is an authorization for the hearing officer to use their discretion to, yes, make the complainant whole, but I think the remedy section, wherein they grant the additional discretion for the hearing officer to grant other, you know, other, take other actions, such as ceasing the illegal conduct, and taking steps to alleviate, such as teach, deter, and punish, as well as this, you know, additional discretion. And I think that this authority to notify a licensure, if they felt the situation warranted, is indicative of the discretion, the broader discretion. I did read the amicus brief that was filed in this case, and I want to point out that their main argument was that this is somehow a violation of due process. And I submit that the due process issue doesn't come into play unless the punitive damage award is arbitrary or excessive or unreasonable. And any defendant before the commission who thinks it is unreasonable has several opportunities to address that. Once the hearing officer produces their opinion, there is a time for exceptions to be made by the defendant. They have an opportunity to put those exceptions in writing, and then the commission as a whole reviews the decision. That's 11 members who have to approve by a quorum the decision. Once that is made, and if they also find that the punitives are appropriate, that case, like this one, Crittenden, can go up to the circuit court and the appellate court. How does the fact that punitive damages are not favored under the law fit into your argument that we should read it in by implication? Well, I don't think that they're favored under the law because, as the case law indicates, they are sometimes of a punitive nature. They are not always entitled to punitive nature. I think the circumstances of each case have to dictate. Your Honor even mentioned in the dissenting opinion that was cited in the amicus brief, the Union case versus Lowe's, it was a false picketing case. And you even said in the dissent that some crimes, or some torts, such as sexual harassment and false prosecution are even worse than false picketing. There are some crimes that are such that need to be addressed with something more than just compensatory damages or lost wages in this case. And I see that my time is up. Just one more. Oh, certainly. If we find the commission has authority to award punitive damages, should this be sent back to look at Wolfman, whether this conduct was Wolfman-wanted? I don't think it needs to be, Your Honor. That decision has been made? The findings of fact of the court below, of the hearing officer below, was that this was, in fact, did rise to the level of punitive damages. And I think this Court has to accept the findings of fact. You do get to issue, to review de novo, the finding of punitive damages. Did the Court mention Wolfman-wanted? Or just rise to the level of punitive damages? I don't know whether the Court mentioned Wolfman-wanted. I do know that the punitive damages are appropriate when it means a wanton disregard for the rights of others, which clearly happened in this case. And I think my co-counsel will address for you what Mr. Crittenden did to Lynetta Boyd. So I don't think Wolfman-wanted needs to be in the order in order to find punitive damages. A wanton disregard for others is appropriate. Thank you very much for this opportunity. Justice Thomas wants me to inform the co-counsel that Justice Freeman and Justice Garment have taken part of your seven minutes with their questions. But you may still come up. You get your seven minutes. I want you to know how kind Chief Justice Gilbride is. Chief, former Chief Justice Harrison in the same position allowed counsel to give his name and sit down. Well, I appreciate the Court's indulgence. And may it please the Court, my name is Christopher Dressel, and I'm here as pro bono counsel for the appellant Lynetta Boyd, who is the claimant in Injured Party before the Cook County Commission on Human Rights. As my co-counsel for the Commission has already addressed the first issue before the Court, whether the Human Rights Ordinance authorizes the Commission to award punitive damages in appropriate cases, I wish to direct the Court's attention to the second point, whether the defendant's conduct in this case was sufficient to justify punitive damages. And I want to emphasize that it was. The Cook County, the appellate court appears to have held either that the conduct at issue was not sufficiently severe to justify punitive damages, or that the Commission did not make the requisite factual findings, or both. But I respectfully submit that the appellate court was wrong on both counts. As to the first point, whether the conduct at issue was sufficiently severe to justify punitive damages, I submit that the record was clear. The defendant's conduct was outrageous, and it amply satisfies the standard for punitive damages announced in this Court's prior case law. In Kelsey v. Motorola, the Court indicated that punitive damages are appropriate when the defendant's conduct indicates fraud or actual malice, deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard for the rights of others. Now, crucially, the Kelsey standard is formulated in the disjunctive. That is, it uses ors rather than ands, which means that the conduct doesn't have to satisfy every factor on the list, just one will do. Here, the conduct at issue amply meets at least several of the standards announced in Kelsey. In addition to being subjected to verbal degradations by her supervisor, on the evening of July 26, 2006, Ms. Boyd was physically and sexually accosted by her supervisor and another patron of the drinking establishment at which she worked. She repeatedly told the supervisor that the conduct offended her and was disturbing to her and threatened her, and nonetheless the supervisor persisted in the violent conduct. I would submit that conduct of this nature, which is violent, which is oppressive, which demonstrates actual malice, and which certainly and unmistakably is intentionally, justifies punitive damages as announced in Kelsey v. Motorola. Can I ask a question? Yes. At the initial level, were punitive damages specifically requested? I believe they were, Your Honor. And the commission awarded $41,670 in lost wages, an additional $5,000 in non-economic but compensatory damages, that is to say damages for emotional distress and so forth, and then an additional $5,000 in punitive damages. And I think it's crucial to look at the actual language that the commission used to justify its punitive damages award. It said that the defendant's conduct was, quote, by any measure extreme in nature, and that appears on page 173 of the Cook County Commission on Human Rights record. Now, the appellate court appears to have faulted the commission for not using the precise word malice in its findings of fact. But I would submit that that sort of level of formalism is not required under this Court's case law. The phrase, by any measure extreme in nature, I think is perfectly synonymous with egregiousness, outrageousness, malice, deliberate violence or oppression, and any of the other formulations this Court has adopted to explain when punitive damages are appropriate. Moreover, the commission did not simply make a bald declaration that the conduct was extreme, but it developed extensive factual findings, set forth in writing, which are sort of a veritable bill of particulars detailing the extent and scope of the defendant's sexually harassing conduct towards Ms. Boyd. Can we separate the conduct of the employer and the conduct of the patron in determining whether or not it rises to the level of wolfman-wanted conduct? I don't believe in this case that would be possible, and that would be for two reasons. So if anyone joins in the phrase employer or not, that conduct goes into weighing wolfman-wanted? I believe it does when the conduct of the employer is the conduct of the supervisor, because this Court's case law indicates that... Mr. Cootington, who was also the proprietor of the establishment, and the patron was a woman named Rachel Thomas. The here of the record indicates that Mr. Cootington was not just a bystander of this incident. He was a participant. He was engaged in the violent conduct. At one point he exposed the patron, Ms. Thomas' breasts, to Ms. Boyd and demanded that Ms. Boyd fondle them. And so there's no... I believe it's impossible to disentangle the conduct of Mr. Cootington, the proprietor of the bar, from the conduct of Rachel Thomas. It was one incident. It was a violent incident. And both of them were involved in the violence. So I think the facts of this case demonstrate outrageous conduct and that punitive damages were justified. And I would stress, as my time elapses, that despite the outrageousness of the conduct at issue, the Cook County Commission's Punitive Damages Award was judicious and modest. It was an award of $5,000 as compared to a lost wages award of $41,670. The amicus brief appears to raise the concern that if this court counts an instance the Cook County Commission's interpretation of the ordinance, the result will be runaway punitive damage. I would submit that this case demonstrates that the county has the authority and will exercise that authority appropriately in appropriate cases such as this one. Thank you, Your Honors. Thank you. Consolidated case numbers 114876 and 114911. Jimmy Crittenden et al. versus Cook County Commission on Human Rights et al. are all taken under advisement as agenda number 15. Mr. Marshall, the Illinois Supreme Court stands adjourned.